| | |
|---|---|
| KATHERYN SWENSON | CIVIL ACTION NO. 17-0417 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Plaintiff claims she is entitled to life insurance benefits under policies purchased by her late husband's employer. Before the Court are motions to dismiss filed by Defendants Lincoln National Life Insurance Company ("Lincoln") [Record Document 13] and United of Omaha Life Insurance Company ("United") [Record Document 34] and a motion for partial summary judgment filed by Plaintiff [Record Document 38]. Because Plaintiff is not entitled to benefits under the terms of either insurance policy, Lincoln's motion [Record Document 13] and United's motion [Record Document 34] are **GRANTED**, and the motion for partial summary judgment [Record Document 38] is **DENIED AS MOOT**.

## I.     Background

### A.     Background Prior to Litigation

Plaintiff is the widow of Donald Swenson ("Swenson"), a former employee of Eldorado Casino Resort Shreveport ("Eldorado"). [Record Document 11 at 1–2]. Swenson took medical leave on January 1, 2013. [*Id.* at 3]. Some time later, Eldorado's disability insurance carrier denied his application for disability benefits, finding that his cancer was a pre-existing condition. [*Id.* at

4]. As his health improved, he attempted to return to work, but Eldorado did not assign him to any shifts before his death on April 18, 2014. [*Id.* at 3, 34].

In 2013, Eldorado maintained a group life insurance policy through Lincoln (the "Lincoln Plan"), which provided employees with basic personal life insurance and optional supplemental coverage. [Record Document 1-6 at 8, 12]. Eldorado was the plan administrator, while Lincoln was the claims administrator with the "sole discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions." [Record Document 17-1 at 5]. Plaintiff alleges that Swenson's coverage included $36,000 in group life insurance benefits and $100,000 in voluntary supplemental benefits and that she and Swenson paid all required premiums. [Record Document 11 at 5].

Although the Lincoln Plan specifies a number of events that result in termination of coverage, two are relevant here: the termination of the Lincoln Plan itself and an employee's cessation of active work, which the Lincoln Plan defines as working at least thirty-five hours per week. [Record Document 1-6 at 8, 12, 20, 23]. The Lincoln Plan terminated on December 31, 2013, when Eldorado switched insurance carriers to United. [Record Documents 1-2 at 1, 5 and 1-6 at 23]. To mitigate the effects of a sudden loss of insurance, the Lincoln Plan provides several mechanisms allowing insureds to remain covered after events that would otherwise terminate coverage. First, by paying premiums as they become due, an employee who ceases active work due to disability may continue coverage for up to twelve months. [Record Document 1-6 at 23]. Second, if certain conditions are met, an employee under sixty who becomes totally disabled can continue life insurance coverage without paying premiums; the

policy documents refer to this as the "Extension of Death Benefit." [*Id.* at 30]. Third, the Lincoln Plan provides an employee a right to convert a terminating group policy to an individual policy if coverage terminates for a reason other than the termination of plan itself (the "Conversion Privilege"). [*Id.* at 34]. If coverage terminates because the Lincoln Plan does, an employee with five years of continuous coverage under the plan may also exercise the Conversion Privilege. [*Id.*]. In either situation, the time period in which to apply for and purchase a conversion policy is thirty-one days from the termination of coverage. [*Id.*]. However, if the employee is not given notice of the right to convert, the period extends sixty additional days. [*Id.*].

On January 1, 2014, Eldorado began offering life insurance through United (the "United Plan") under two separate, but nearly identical policies, one for a basic plan, [Record Document 1-2 at 39–76], and one for supplemental coverage, [*id.* at 77–120]. Eldorado convened meetings for interested employees to enroll in the new coverage. *Swenson v. Eldorado Casino Shreveport Joint Venture (Swenson I)*, No. 15-CV-2042, 2016 WL 1084279, at *1 (W.D. La. Jan. 6, 2016), *report and recommendation adopted*, No. 15-CV-2042, 2016 WL 1109097 (W.D. La. Mar. 18, 2016). Like the Lincoln Plan, the United Plan identifies Eldorado as the plan administrator and grants United discretion to administer claims. [Record Document 1-2 at 65, 72, 110, 117]. Plaintiff alleges that Swenson applied for $122,000 in basic and supplemental life insurance coverage. [Record Document 11 at 31].

Under the United Plan, an employee becomes eligible for insurance upon completion of a sixty-day eligibility waiting period, which may be satisfied by sixty days of employment prior

3

to the plan's effective date. [Record Document 1-2 at 47, 87–88]. Coverage begins once an eligible employee actively works, which the plan defines as working thirty-five hours per week, or once an employee submits a written enrollment request and commences active work. [*Id.* at 47–48, 87, 89]. The United Plan also provides that an employee who was insured under a prior employer-sponsored plan on the day before the effective date of the United Plan may continue coverage if the employee is eligible but not actively working due to sickness or injury, is not eligible for a continuation of insurance under the prior plan, is not retired, is not totally disabled, and is approved by United's home office (the "Continuity Provision"). [*Id.* at 47–48, 88].

After Swenson's death, Plaintiff submitted claims to both insurers. [Record Document 1-2 at 1–6]. Lincoln denied her claim because Swenson was too old to qualify for an Extension of Death Benefit and because the Lincoln Plan terminated prior to his death ("Lincoln's Benefits Denial Letter"). [*Id.* at 4–6]. United denied benefits because Swenson had not actively worked for Eldorado during the policy period and because United had received no premiums for Swenson ("United's Benefits Denial Letter").[1] [*Id.* at 1]. Following these denials, Eldorado issued a check to Plaintiff "containing the life insurance premiums paid in the amount of $330.30." [Record Documents 11 at 2 and 1-2 at 7].[2]

**B.**     *Swenson I*

Plaintiff initially sued Lincoln, United, and Eldorado in state court, alleging violations of Louisiana insurance law. *Swenson I*, 2016 WL 1084279, at *2. Following removal, the Court

---

[1] United appears to have abandoned the claim that no premiums were ever paid on Swenson's behalf.

[2] It is unclear whether this money represented premiums paid to Lincoln or to United.

granted Plaintiff an opportunity to amend her complaint after finding that the Employee Retirement Income Security Act ("ERISA") preempted her claims. *See id.* at *5; *Swenson I*, No. 15-CV-2042, 2016 WL 6106483, at *2 (W.D. La. Oct. 19, 2016). Plaintiff's amendment re-urged her state law claims and added fourteen claims designated as federal causes of action. *See Swenson I*, 2016 WL 6106483, at *2. Upon renewed motions to dismiss, the Court dismissed with prejudice all state-law claims, a federal claim for declaratory judgment, and federal claims sounding in equity: detrimental reliance, promissory or equitable estoppel, reformation, unjust enrichment, and breach of fiduciary duty. *Swenson I*, No. 15-CV-2042, 2017 WL 1334307, at *3–7 (W.D. La. Apr. 7, 2017), *aff'd sub nom. Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809 (5th Cir. 2017); *Swenson I*, 2016 WL 6106483, at *2–3, *5–6. The Court rejected Plaintiff's argument that administrative appeals would be futile and dismissed her ERISA claims without prejudice for failure to exhaust. *Swenson I*, 2017 WL 1334307, at *5; *Swenson I*, 2016 WL 6106483, at *4.[3] Plaintiff appealed, and the Fifth Circuit affirmed the dismissal of her state-law and equitable claims. *Swenson I*, 876 F.3d at 812. While her appeal was pending, Plaintiff settled with Eldorado. [Record Document 23-1 at 9].

## C. Plaintiff's Administrative Appeals

Following the Court's dismissal of her claims for benefits, Plaintiff appealed to both

---

[3] Plaintiff also asserted claims under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), which the Court dismissed without prejudice as to Lincoln, *Swenson I*, 2016 WL 6106483 at *7, but with prejudice as to United and Eldorado, *Swenson I*, 2017 WL 1334307, at *7. The Court notes that its dismissal without prejudice of the COBRA claims against Lincoln was erroneous because, as discussed below, COBRA does not apply to life insurance.

insurers. [Record Documents 1-4 and 11-2].[4] Lincoln denied her appeal as untimely because the Lincoln Plan requires that any appeals be brought within sixty days of the initial denial ("Lincoln's Appeal Denial Letter"). [Record Document 1-5 at 2]. United also denied her appeal, asserting that Plaintiff was ineligible for benefits because Swenson had not actively worked before his death and because the Continuity Provision did not apply ("United's Appeal Denial Letter"). [Record Document 11-14 at 3–4]. United also noted that Plaintiff's appeal was untimely, as the United Plan requires beneficiaries to appeal within sixty days of denial. [*Id.* at 4]. In response to these denials, Plaintiff filed the instant suit.

### D. Claims in the Current Suit

ERISA is an "enormously complex and detailed" statute addressing the management of employer-provided health, life, and retirement benefits. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Pertinent to the instant suit, ERISA authorizes a beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). In addition, ERISA allows a beneficiary to "obtain other appropriate equitable relief . . . to redress [ERISA] violations or . . . to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3). Finally, the statute requires that plan administrators make available various documents related to an employee's coverage. *Id.* § 1132(c)(1). Plaintiff brings claims under each of these provisions.

---

[4] Plaintiff's appeal to United is dated both April 16, 2017 and November 16, 2017. [Record Document 11-2 at 1–2]. Given that United denied Plaintiff's appeal on August 2, 2017, [Record Document 11-14], it appears that the November date is a clerical error.

### 1.    Claims Against Lincoln

Plaintiff seeks $136,000 in life insurance benefits because Lincoln "accept[ed] premiums from [P]laintiff and Mr. Swenson and . . . fail[ed] to notify [P]laintiff and Mr. Swenson that [Lincoln] did not consider Mr. Swenson as a covered employee." [Record Document 11 at 21]. This process allegedly resulted either in a continuation of life insurance coverage or in the conversion of Swenson's group policy to an individual one. [*Id.* at 22–23]. Plaintiff also disputes Lincoln's stated reasons for denying coverage. [*Id.* at 23–25]. Additionally, she alleges that Lincoln failed to provide notice that Swenson's coverage had terminated and notice of the Conversion Privilege. [*Id.* at 21–22]. According to Plaintiff, these alleged failures and inaccuracies entitle her to benefits. Finally, she asserts a claim for statutory penalties for Lincoln's failure to provide her with a complete record during her administrative appeal, a set of equitable claims (breach of fiduciary duty, equitable estoppel, detrimental reliance, and unjust enrichment), and a request for "Declaratory Judgment Relief." [*Id.* at 26–28, 36–42, 46].

### 2.    Claims Against United

Plaintiff seeks $122,000 in benefits to which she is allegedly entitled under the United Plan. [*Id.* at 31]. In response to United's assertion that benefits are not due because Swenson was not actively working, Plaintiff alleges that Eldorado considered Plaintiff to be actively employed. [Record Documents 1-2 at 1 and 11 at 3]. She contends that under the United Plan coverage can begin by written application without the necessity of active work and thus that Swenson was insured because he had completed an application form during the open enrollment period. [Record Document 11 at 30–31]. She also asserts coverage based on United's acceptance of

premiums from Eldorado on Swenson's behalf and the fact that Swenson died after the conclusion of the plan's sixty-day eligibility waiting period. [*Id.* at 31–32]. Finally, she alleges that Swenson was covered under the Continuity Provision. [*Id.* at 32–36]. As she does against Lincoln, Plaintiff also seeks equitable remedies and statutory penalties. [*Id.* at 36–40, 42–46].

### 3. Pending Motions

Both Lincoln and United have filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the terms of the Lincoln Plan and the United Plan (collectively, the "Plans") bar Plaintiff from receiving benefits. [Record Documents 13 and 34]. The parties have filed oppositions and replies, which have been considered by the undersigned. [Record Documents 16, 17, 36, and 37]. Plaintiff has also filed a motion for summary judgment against Lincoln seeking penalties for Lincoln's refusal to produce documents relevant to Swenson's coverage. [Record Document 38]. Lincoln has filed an opposition to which Plaintiff has replied. [Record Documents 40 and 42].

## II. Law and Analysis

### A. Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In determining whether the plaintiff has stated a plausible claim, the court must construe the complaint in the

light most favorable to her, *see In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010), and accept as true all well-pleaded factual allegations, *see Twombly*, 550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, the Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

### B.  State-Law Claims

Lincoln and United move to dismiss what they characterize as Plaintiff's state-law claims on grounds of res judicata and preemption. [Record Documents 13-1 at 9–16 and 34-1 at 4]. Plaintiff's claims for detrimental reliance, unjust enrichment, and equitable estoppel are raised under federal, not state law. Therefore, there are no state-law claims to be dismissed.

### C.  Statutory Penalties for Failure to Produce Documents

Under ERISA, an administrator who "refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish to a participant or beneficiary" is liable for statutory penalties of up to $110 per day from the date of refusal. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2560.503-1(g)(1)(vii)(D) (2017) (requiring that a plan administrator who denies a claim notify the claimant of her right to "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits"); 29 C.F.R. § 2575.502c-1 (2017) (increasing the statutory penalty to $110 per day).

Plaintiff argues that she is entitled to penalties because Lincoln and United failed to produce various documents during her administrative appeals. [Record Document 11 at 39–46]. Lincoln characterizes this claim as a premature discovery request. [Record Documents 13-1 at 9 n.2 and 17 at 7].[5]

> For ERISA purposes, an administrator is:
>
> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A) (2012). An insurer who administers claims but is not an administrator as defined by ERISA is not liable under § 1132(c)(1) for failing to produce plan documents. *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 486–87 (5th Cir. 2017). Although Lincoln and United administer claims, both Plans designate Eldorado as the plan administrator. [Record Documents 1-2 at 72, 117 and 11-17 at 37]. Because neither Lincoln nor United are "administrators" as the term is used in § 1132(c)(1), they incur no liability for any failure to produce the requested documents. Therefore, Plaintiff's claim for statutory penalties is dismissed, and her motion for summary judgment is denied as moot.

### D.  Consolidated Omnibus Budget Reconciliation Act ("COBRA") Claims

Plaintiff argues that under COBRA, a beneficiary who would lose coverage may elect continuation coverage. [Record Document 16 at 13]. However, the coverage that may be continued under COBRA is the coverage provided by "group health plan[s]." 29 U.S.C.

---

[5] United does not address Plaintiff's claim for statutory penalties.

§ 1161(a) (2012). Because "ERISA was amended in part by . . . COBRA . . . without, however, affecting life insurance," *Robin v. Metro. Life Ins. Co.*, 147 F.3d 440, 442 n.4 (5th Cir. 1998), Swenson had no right under COBRA to continue his life insurance coverage. As a result, the Court will dismiss Plaintiff's COBRA claims.

### E.    Declaratory Judgment

Plaintiff seeks declaratory judgment as a procedural vehicle "to recover benefits under the . . . Plan[s]." [Record Documents 16 at 23 and 36 at 23]. However, 29 U.S.C. § 1132(a)(1)(B) is the appropriate mechanism to "recover benefits due . . . under the terms of [a] plan." When a declaratory judgment claim merely duplicates a substantive claim for benefits, the former claim may be dismissed. *Khan v. Am. Int'l Grp., Inc.*, 654 F. Supp. 2d 617, 634 (S.D. Tex. 2009) (citing *Baker v. Hartford Life & Acc. Ins. Co.*, No. 4:08-CV-153-A, 2008 WL 2378041, at *2 (N.D. Tex. June 9, 2008)). Therefore, the Court dismisses Plaintiff's declaratory judgment claim.

### F.    Equitable Claims for Benefits

Section 1132(a)(1)(B) authorizes an ERISA plan participant or beneficiary to bring an action at law to recover benefits owed under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(3) creates a cause of action to "obtain other appropriate equitable relief . . . to enforce . . . the terms of [a] plan." *Id.* § 1132(a)(3). If the relief that an ERISA plaintiff seeks is available under § 1132(a)(1)(B), she cannot maintain a claim under § 1132(a)(3) for the same relief. *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 n.5 (5th Cir. 2003) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)). Thus, when a plaintiff seeks benefits to which she is allegedly entitled, the proper vehicle is an action at law under

§ 1132(a)(1)(B). *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (quoting *Tolson v. Avondale Indus., Inc.*, No. CIV. A. 97-0896, 1997 WL 539919, at *7–8 (E.D. La. Aug. 29, 1997), *aff'd*, 141 F.3d 604 (5th Cir. 1998)). This is true even if she cannot prevail on her claim because the terms of her ERISA plan exclude her from benefits. *See id.* (quoting *Tolson*, 1997 WL 539919, at *8). Applying this principle, the Fifth Circuit in *Swenson I* specifically held that the "availability of th[e] statutory remedy under [§ 1132] . . . defeats Swenson's claim for equitable relief under federal law." 876 F.3d at 812.

## 1.    Equitable Estoppel

Plaintiff alleges that Lincoln's failure to consider her appeal in good faith estops the insurer from denying benefits. [Record Document 11 at 27]. Even accepting Plaintiff's allegation of bad faith as true, her estoppel claim fails. Although the factual predicate for this claim did not arise until after *Swenson I*, the Court's prior holding that Plaintiff's exclusive avenue to obtain benefits under the Lincoln Plan is § 1132(a)(1)(B) has no less force. *See Swenson I*, 2016 WL 6106483, at *5–6. Therefore, Plaintiff's claim that Lincoln is equitably estopped from denying benefits must be dismissed.

## 2.    Plaintiff's Remaining Equitable Claims

Plaintiff asserts detrimental reliance and breach of fiduciary duty claims against both insurers as well as an unjust enrichment claim against Lincoln. [Record Document 11 at 27–28, 36–38]. Lincoln and United argue that these claims are barred by res judicata. [Record Documents 13-1 at 9–10 and 34-1 at 4]. Plaintiff does not respond to this argument.

Following a final judgment on the merits, res judicata prevents parties from "relitigating

issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Cromwell v. Cty. of Sac*, 94 U.S. 351, 352 (1876)). Four conditions must be met for res judicata to apply:

> First, the parties in a later action must be identical to (or at least be in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.

*United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) (citing *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 169 (5th Cir. 1992)). A dismissal with prejudice is a final judgment on the merits. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993). Two cases involve the same claim when "they are based on the 'same nucleus of operative facts.'" *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) (quoting *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000)).

Because Plaintiff brought these equitable claims in *Swenson I*, they were raised in a prior action. *See Swenson I*, 2017 WL 1334307, at *7; *Swenson I*, 2016 WL 6106483, at *5. Lincoln, United, and Plaintiff were all parties to *Swenson I*, and this Court had jurisdiction. *See Swenson I*, 2016 WL 1084279, at *5. Because the Court dismissed all equitable claims with prejudice, there was a final judgment on the merits. *See Swenson I*, 2017 WL 1334307, at *7; *Swenson I*, 2016 WL 6106483, at *5. Although the instant suit references some conduct that occurred during Plaintiff's administrative appeals, the operative facts relating to Swenson's coverage status at the time of his death and supporting Plaintiff's equitable claims for benefits are unchanged. Therefore, res judicata bars her detrimental reliance, breach of fiduciary duty, and unjust

enrichment claims, and the Court dismisses them with prejudice.

### G.    Equitable Estoppel or Waiver of Specific Plan Provisions

To prevent consideration of various provisions of the Plans that appear to bar her from benefits, Plaintiff alleges that Lincoln and United are estopped from asserting or have waived their right to assert these provisions. [Record Documents 11 at 26–28, 16 at 11–12, 16–17, and 36 at 15–18]. Although estoppel and waiver are distinct equitable mechanisms, *Pitts ex rel. Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991), Plaintiff treats them as a single claim: "[Lincoln] has waived and/or is estopped from raising any new defenses not previously raised during the administrative appeal process," [Record Document 11 at 47]. To avoid confusion, the Court will employ the term Plaintiff uses when discussing a particular claim.

Because the Court dismissed Plaintiff's claims for equitable relief with prejudice in *Swenson I*, Lincoln and United argue that res judicata bars these claims. [Record Documents 13-1 at 9–10 and 34-1 at 4]. In response, Plaintiff contends that she "does not seek equitable estoppel to prevent [Lincoln] from denying benefits, but rather, [Lincoln] has waived raising <u>new</u> defenses like it did in its Rule 12(b)(6) motion and during the administrative appeal . . . ." [Record Document 16 at 6].[6] Hence, as regards these claims, Plaintiff invokes estoppel and waiver not to obtain benefits directly, but rather to bar the insurers from asserting particular provisions of the Plans as defenses to her § 1132(a)(1)(B) action for benefits. Because the Court in *Swenson I* dismissed her legal claim for benefits without prejudice, these estoppel claims are not barred by res judicata.

---

[6] Plaintiff's opposition to United's motion does not address res judicata.

1.      **Estoppel from Asserting Timeliness of Appeal**

Lincoln denied Plaintiff's request for benefits on August 25, 2014; she appealed this denial on November 14, 2016. [Record Documents 1-4 at 1 and 1-5 at 2]. Because the Lincoln Plan requires that administrative appeals be made within sixty days, [Record Document 1-6 at 38], Lincoln denied the appeal as untimely in a letter that allegedly failed to comply with Lincoln Plan provisions requiring that an appeal denial notice describe any further appeal procedures, the right to access certain claim information, and the right to bring legal action, [Record Documents 1-5 at 2 and 11 at 27]. Plaintiff argues that this failure estops Lincoln from asserting the appeal's untimeliness. [Record Document 11 at 27]. To prevail on an estoppel theory in the ERISA context, a plaintiff must show: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005). Here, the requirements of equitable estoppel are not satisfied because Lincoln's alleged failure to include the required information, even if a misrepresentation of Plaintiff's rights, did not induce any reliance. Indeed, Plaintiff responded by filing suit.

United's Appeal Denial Letter, although treating the substance of her claim, also mentioned that her appeal was untimely because United initially denied benefits on July 17, 2014 and Plaintiff did not file her appeal until April 16, 2017. [Record Document 11-14 at 4]. Like the Lincoln Plan, the United Plan requires that appeals be made within sixty days of a claimant's receipt of notification of an initial denial of benefits. [Record Document 1-2 at 67, 112]. Plaintiff argues that United waived the right to assert untimeliness because United was not "prejudiced"

by the untimely appeal. [Record Document 36 at 18]. However, the Fifth Circuit has repeatedly and strictly enforced ERISA plans' provisions regarding the form and timeliness of administrative appeals. *See, e.g., Moss v. Unum Grp.*, 638 F. App'x 347, 350 (5th Cir. 2016) (per curiam); *McGowan v. New Orleans Emp'rs Int'l Longshoremen's Ass'n*, 538 F. App'x 495, 499 (5th Cir. 2013) (per curiam). Therefore, United has not waived its right to assert that Plaintiff's appeal was untimely.

Plaintiff also argues that Lincoln and United could have raised the timeliness of appeal in *Swenson I* because at no time during the pendency of that action would an administrative appeal have been timely. [Record Documents 16 at 12 and 36 at 18]. However, the Court dismissed Lincoln from *Swenson I* on October 19, 2016. *Swenson I*, 2016 WL 6106483. Plaintiff filed her administrative appeal on November 14, 2016. [Record Document 11-4 at 1]. United was dismissed on April 7, 2017, *Swenson I*, 2017 WL 1334307, and Plaintiff appealed nine days later, [Record Document 11-2 at 1]. Although Lincoln and United could have truthfully stated in *Swenson I* that any administrative appeal would be untimely, it would be strange to require them to preemptively defend hypothetical appeals. Because Lincoln and United had no reason to raise the issue of timeliness until Plaintiff had appealed, because the failure to include required information in Lincoln's Appeal Denial Letter does not warrant estoppel, and because any lack of "prejudice" to United resulting from Plaintiff's untimely appeal did not waive United's right to assert the untimeliness of her appeal, the Court grants the insurers' motions on this claim.

2. **Estoppel or Waiver of Lincoln's Assertion that Swenson Failed to Exercise the Conversion Privilege**

a. **Estoppel or Waiver by Alleged Misconduct on Appeal**

According to Plaintiff, Lincoln is barred from asserting that Swenson did not acquire a conversion policy because Lincoln mishandled her administrative appeal. [Record Documents 11 at 26–28 and 16 at 11–12]. Although Lincoln argues that res judicata applies here, [Record Document 13-1 at 9], res judicata bars only "claims that were or <u>could have been</u> advanced in support of the cause of action on the occasion of its former adjudication," *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (citing *Allen*, 449 U.S. at 94). Because the factual predicate for this estoppel or waiver arose during her administrative appeal, Plaintiff could not have raised these claims in *Swenson I*. Therefore, res judicata does not apply.

Plaintiff asserts four factual predicates for the application of estoppel or waiver. First, she alleges that Lincoln's bad faith in considering the appeal estops it from asserting that Swenson did not exercise the Conversion Privilege. [Record Document 11 at 26–27]. Plaintiff does not allege any facts other than the denial of her appeal that would support her conclusory assertion that Lincoln acted in bad faith. [*Id.*]. As the Court need not credit conclusory allegations, *Plotkin*, 407 F.3d at 696 (citing *Southland Sec. Corp.*, 365 F.3d at 361), the Court finds that Lincoln's alleged bad faith does not preclude Lincoln from claiming that Swenson did not purchase a conversion policy.

Second, Plaintiff alleges that Lincoln's failure to provide her with all the records that she requested estops it from asserting that Swenson did not timely exercise the Conversion Privilege.

[Record Document 11 at 27]. Equitable estoppel requires detrimental reliance. *Lyng v. Payne*, 476 U.S. 926, 935 (1986) (citing *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984)). Lincoln denied Plaintiff's appeal because it was untimely. [Record Document 1-5 at 2]. Even assuming these records support Plaintiff's contention that Swenson was insured, nothing they contain would have rendered her appeal timely. Therefore, lack of access to the records caused Plaintiff no harm in this instance.

Third, Plaintiff alleges that Lincoln is estopped from asserting the Conversion Privilege provisions because Lincoln's Appeal Denial Letter did not describe further appeal procedures, her right to access information about the claim, and her right to bring legal action. [Record Document 11 at 27]. As discussed above, the failure of Lincoln's Appeal Denial Letter to include all required information does not estop Lincoln from asserting the untimeliness of Plaintiff's appeal. Similarly, there is no reason for the Court to conclude that Lincoln lost its right to assert that Swenson did not timely exercise his Conversion Privilege.

Finally, Plaintiff argues that waiver occurred because Lincoln's Appeal Denial Letter failed to explain that Swenson's period of time to purchase a conversion policy had elapsed. [Record Document 16 at 11–12]. Plaintiff cites several cases for the proposition that the "failure of an ERISA insurer to raise a policy provision as a defense when it had to [sic] ability to do so acts as a waiver of any such defense by an insurer." [*Id.* at 12]. The only binding precedent she cites is *Rhorer v. Raytheon Engineers & Constructors, Inc.* 181 F.3d 634 (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). In *Rhorer*, the Fifth Circuit held that summary judgment evidence that a plan administrator knew that an employee was severely ill,

knew that he had stopped working, allowed him to enroll in optional life insurance, and accepted his premiums raised a fact issue regarding whether the administrator had waived the right to assert that the employee lacked coverage because he was not actively working. *Id.* at 645; *see also Harris Methodist Fort Worth v. Sales Support Servs., Inc.*, No. 4:01-CV-567-Y, 2007 WL 5011899, at *1 (N.D. Tex. Dec. 20, 2007) (holding that a plan administrator waived the right to deny coverage when the "record [wa]s replete with evidence that the Plan consistently acted as though [the beneficiaries] had coverage . . . including by repeatedly attempting to get its reinsurers to cover [the] claims and by covering claims made by other providers regarding the [beneficiaries]").

*Rhorer* was primarily concerned with the plan administrator's conduct prior to the application for benefits; it was that conduct that allowed the inference of waiver. *Rhorer*, 181 F.3d at 645. Plaintiff takes issue not with Lincoln's accepting premiums but rather with the specific contents of Lincoln's Appeal Denial Letter.[7] [Record Document 16 at 11–12]. Hence, *Rhorer* is inapplicable, and Plaintiff's waiver argument fails. *Cf. Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 396–97 (5th Cir. 1998) ("[W]e are unwilling to conclude that the administrator has, by determining that [the decedent] was not covered by the . . . Policy, waived the right to interpret any particular provisions of the . . . Policy once it has been shown that [the decedent] was in fact covered."). Therefore, the Court dismisses Plaintiff's claim that Lincoln's alleged misconduct

---

[7] While Plaintiff also alleges that by paying premiums Swenson ensured his continued coverage, [Record Document 11 at 21–22], she does not allege that Lincoln's acceptance of premiums produced the specific waiver at issue here.

during the administrative appeal estops it from asserting reasons for denying benefits other than those stated in Lincoln's Benefits Denial Letter.

> **b.  Waiver Resulting from Failure to Reference the Conversion Privilege in Lincoln's Benefits Denial Letter**

Although Plaintiff's pleading is not entirely clear on this point, she argues in her memorandum in opposition to Lincoln's motion that Lincoln waived its ability to assert that Swenson did not exercise his Conversion Privilege because Lincoln did not pursue this line of reasoning in its Benefits Denial Letter. [Record Document 16 at 6 & n.4]. However, the binding precedent that she cites does not support her claim. [Record Document 16 at 17]. In *Pitts ex rel. Pitts v. American Security Life Insurance Co.*, an ERISA plan required at least ten enrolled employees. 931 F.2d 351, 353 (5th Cir. 1991). The insurer accepted premiums for five months in an amount sufficient to cover only a single employee and paid medical benefits for that employee *Id.* at 354, 357. As a result, the Fifth Circuit held that the insurer waived the right to assert the minimum-participant provision. *Id.* at 357. However, *Pitts* concerned a waiver by an insurer's contrary conduct (accepting premiums and paying benefits when a policy was not enforceable on its terms). *Id.* Here, the asserted misconduct is a failure to mention a particular reason for denying benefits, which is not the sort of affirmative misconduct during the policy period that concerned the Fifth Circuit in *Pitts*. Therefore, the Court holds that Lincoln has not waived its ability to assert that Swenson did not purchase a conversion policy.

### 3.    Waiver of Defenses by United

United originally denied benefits because Swenson never actively worked during the policy period and because United received no premiums on his behalf. [Record Document 1-2 at 1]. On appeal, United affirmed its denial of benefits on the basis of the active work requirement and its finding that Swenson was not covered under the Continuity Provision. [Record Document 11-14 at 3–4]. Plaintiff argues that United waived its right to invoke the active work requirement and the Continuity Provision by accepting Swenson's application, allowing him to be listed on the final enrollment list, and failing to notify him that he was not insured. [Record Document 36 at 15–17].

#### a.    Waiver Resulting from Acceptance of Application

Plaintiff argues that by holding an open enrollment period during which it received Swenson's application, United waived the right to assert that he was not insured. [*Id.* at 16]. In support, she cites *Rhorer*. [*Id.* at 15]. However, *Rhorer* is factually distinguishable. In *Rhorer*, the plan administrator knew that an employee was seriously ill and that he had stopped working, yet allowed him to enroll in optional life insurance and accepted his premiums. 181 F.3d at 645. The Fifth Circuit held that this raised a fact question regarding whether the administrator had waived the right to assert the employee's ineligibility on grounds that he was not actively working. *Id.*

Plaintiff has not alleged a similar degree of knowledge. Although she alleges that United "accept[ed] premiums from Plaintiff and Mr. Swenson for coverage for which U[nited] did not consider Mr. Swenson to be eligible," [Record Document 11 at 29], she offers no factual allegations from which the Court can infer that United actually knew that Swenson was not

actively working in the months before his death. In fact, Plaintiff argues that United could have

investigated whether the employees for which it received premiums were actively working and

that, if it had done so, it would have found that Swenson was not. [Record Document 36 at 16].

She then concludes that United could have notified Swenson that he was not insured. [*Id.*].

Implicit in this argument is a concession that United did not actually know that Swenson was

not actively working. Therefore, United is differently positioned than the plan administrator in

*Rhorer*, and thus *Rhorer* does not require that this Court find that United waived its right to assert

that Swenson was not covered at the time of his death.

### b. Waiver Resulting from Failure to Provide Notice of Swenson's Coverage Status

Plaintiff argues that United waived its right to assert that Swenson was not insured under

the United Plan because Swenson's name appears on the final enrollment list and because

United never notified Swenson that he was not insured. [Record Document 36 at 15–17].[8] In

support, Plaintiff cites persuasive authority for the proposition that a court need not consider

explanations raised during litigation that were not raised by an administrator in the first instance.

[Record Document 36 at 17]; *see Garrett v. Principal Life Ins. Co.*, 555 F. App'x 809, 812 (10th Cir.

2014) (holding that a district court "properly declined to consider [an insurer's] new arguments"

---

[8] United represents that it did not receive Swenson's enrollment form from Eldorado until after Swenson's death. [Record Document 37 at 9]. If true, this would defeat Plaintiff's claim that United waived provisions of its plan by its conduct prior to Swenson's death. Because this matter is before the Court on a motion to dismiss and this fact lies outside the pleadings, the Court cannot consider it.

raised during litigation); *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) ("[W]e are free to ignore ERISA plan interpretations that did not actually furnish the basis for a plan administrator's benefits decision."). Even assuming that this proposition is a correct statement of Fifth Circuit law, it is inapplicable here because United has steadfastly maintained that Swenson was uninsured because he was not actively working. [Record Documents 1-2 at 1, 11-14 at 3, and 18 at 2–3].

Plaintiff also argues that "the contractual terms of the plans and/or ERISA's 'qualifying event' provisions" required United to notify Swenson that he was uninsured. [Record Document 36 at 17]. Plaintiff's reference to "qualifying event" provisions appears to refer to COBRA, *see, e.g.*, 29 U.S.C. § 1166 (2012); as discussed above, COBRA does not apply to life insurance. While the United Plan does require notice to an employee when the Plan is discontinued or the employee ceases to be eligible, notice must be provided by the policyholder, which was Eldorado, not United. [Record Document 1-2 at 45, 50, 83, 92]. Because Plaintiff has pointed to no contractual or statutory provision obligating United to preemptively notify Swenson that he was not insured under the United Plan, United is not liable for any notice that Swenson did not receive.

### H.  Claims for Benefits Under § 1132(a)(1)(B)

Having dismissed Plaintiff's secondary claims, the Court now turns to her central claim for benefits to which she is allegedly entitled under the Plans. [Record Document 11 at 20–26, 28–36]. Before a court can review a denial of benefits, an ERISA plaintiff must exhaust her administrative remedies. *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1300–03 (5th Cir.

1985). Although the text of ERISA does not require exhaustion, *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995), the Fifth Circuit has repeatedly affirmed that a "claimant who is denied benefits under an ERISA plan must exhaust all administrative remedies afforded by the plan before instituting litigation for recovery of benefits," *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256 (5th Cir. 2005) (citing *Hager v. NationsBank N.A.*, 167 F.3d 245, 247 (5th Cir. 1999)). When an ERISA plan provides a mechanism to appeal a benefits denial, a plaintiff's failure to timely appeal constitutes a failure to exhaust. *See Moss*, 638 F. App'x at 350.

Failure to exhaust the administrative remedies offered by an ERISA plan is an affirmative defense. *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1019 (5th Cir. 2009). Although United's answer does not use the phrase "failure to exhaust," United has pleaded: "Plaintiff failed to timely appeal the denial of benefits under the terms of the plan documents." [Record Document 18 at 4]. Lincoln has yet to file an answer, but has expressly raised the defense in its reply memorandum. [Record Document 17 at 6]. Although Lincoln asserted this defense for the first time in its reply brief, the Court finds that Plaintiff had adequate notice because she specifically pleaded that Lincoln was estopped from asserting the untimeliness of her appeal and argued the issue of timeliness in opposition to both motions to dismiss. [Record Documents 11 at 27, 47, 16 at 11–12, and 36 at 18]. Thus, the Court finds that it may properly rule upon an exhaustion defense.

In *Moss v. Unum Group*, the Fifth Circuit held on almost identical facts that failure to timely appeal a denial of benefits under an ERISA plan constitutes failure to exhaust administrative remedies. 638 F. App'x at 351. After Moss filed a claim for benefits under an

ERISA plan, Unum denied benefits in a letter stating the applicable time for bringing an administrative appeal. *Id.* at 349. Rather than appeal, Moss filed a lawsuit, which the district court dismissed without prejudice for failure to exhaust. *Id.* The insurer denied Moss's untimely appeal. *Id.* Moss responded by filing a second suit, which the district court dismissed with prejudice. *Id.* The Fifth Circuit affirmed. *Id.* at 351.

This Court dismissed Plaintiff's first suit without prejudice for failure to exhaust. *Swenson I*, 2016 WL 6106483, at *4; *Swenson I*, 2017 WL 1334307, at *5. Lincoln and United then denied her appeals as untimely. [Record Documents 1-5 at 2 and 11-14 at 4]. By neglecting to timely appeal, Plaintiff failed to exhaust her administrative remedies. *See Lacy*, 405 F.3d at 256. As a result, the Court must dismiss her claim for benefits. Although a dismissal for failure to exhaust is typically without prejudice, a dismissal with prejudice is allowable when exhaustion is no longer possible. *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007); *see Moss*, 638 F. App'x at 349, 351. Because Plaintiff can never file a timely appeal under the Plans' terms, she can never exhaust her remedies. Therefore, dismissal of her claim for benefits shall be with prejudice.

## III.   <u>Conclusion</u>

In light of the above, Lincoln's and United's motions to dismiss [Record Documents 13 and 34] are **GRANTED**, and Plaintiff's motion for partial summary judgment [Record Document 38] is **DENIED AS MOOT**.

**IT IS  ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that referral of the remaining parties to the Magistrate

Judge is deferred pending resolution of Eldorado's motion for reconsideration [Record Document 44].

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___18th___ day of ___JUNE___, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE